**Willie GOFF, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 428–87.**

Court of Criminal Appeals of Texas,
En Banc.

Sept. 27, 1989.

---

Clifton Holmes, Longview, for appellant.

David Brabham, Dist. Atty. & William K. Gleason & R. Clement Dunn, Asst. Dist. Attys., Longview, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge:

Appellant was convicted by a jury of the offense of unlawful manufacture of methamphetamine of an aggregate weight, including any adulterants or dilutants, of more than 400 grams. Tex.Rev.Civ.Stat. Ann. art 4476–15, § 4.03(a), (d)(3) (Vernon Supp.1989). Punishment was assessed by the jury at 99 years confinement in the Texas Department of Corrections.

On appeal, the Texarkana Court of Appeals affirmed appellant's conviction in a published opinion. *Goff v. State*, 727 S.W.2d 603 (Tex.App.—Texarkana 1987).

We granted appellant's petition for discretionary review to determine whether the court of appeals erred in holding that the evidence was sufficient to prove the manufacture of over 400 grams of methamphetamine. See Tex.R.App.Pro. 200(c)(2). We will reverse.

A brief summary of the relevant facts is in order. After receiving a tip from a confidential informant and securing a search warrant, police officers went to appellant's mobile home. Appellant, his wife and another female were in the mobile home. Approximately ten yards from the mobile home was a large padlocked building. Appellant, at the instance of the police, removed the lock by using a screwdriver. A large assortment of equipment and chemicals were found in the building. Specifically, the chemicals seized were: 4.9 pounds of a material consisting of 15.2 grams of methamphetamine with the remainder composed of ether and acetone, 5.5 pounds of methylamine, 68.7 grams of phenylacetone, a five gallon can of ether, and a five gallon can of acetone. The equipment and chemicals were described as comprising a drug manufacturing laboratory. A strong, distinct odor commonly associated with methamphetamine production was also present.

Inside appellant's mobile home, a chemical catalog, a blue folder containing information about the manufacture of methamphetamine, several chemical beakers and a set of keys which fit the padlock on the building containing the laboratory were recovered. The court of appeals found this evidence sufficient to support a finding that appellant manufactured more than 400 grams of methamphetamine, including adulterants and dilutants.

The court of appeals noted that there was no direct evidence to show that 400 grams of methamphetamine had been manufactured. That court, however, looked to the circumstantial evidence to find sufficient evidence to support the jury's verdict.

In reviewing the sufficiency of the evidence in either a direct or circumstantial evidence case, we must view the evidence in the light most favorable to the prosecu-

tion and consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Carlsen v. State*, 654 S.W.2d 444, 449 (Tex.Cr.App.1983).

■ A conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of guilt of the defendant. In other words, if the evidence supports a reasonable inference other than appellant's guilt, a finding of guilt beyond a reasonable doubt is not rational. *Carlsen*, supra at 449; *Valdez v. State*, 776 S.W.2d 162 (Tex.Cr.App.1989.)

■ In the instant case, a rational trier of fact could have found that appellant was engaged in the process of manufacturing methamphetamine at the time of his arrest. The evidence showed that various items recovered from the scene were consistent with the operation of a methamphetamine laboratory. Specifically, chemicals commonly used in the manufacturing process along with assorted beakers and glassware were recovered from the premises.[1]

A chemist for the Texas Department of Public Safety testified that the 15.2 grams of methamphetamine that was recovered had been completed through the manufacturing process. The methamphetamine was found suspended in ether and acetone. This suspension is a process by which methamphetamine is "cleaned up" and the impurities removed. Additionally, a strong odor commonly associated with the manufacturing of methamphetamine permeated the lab area.

Since the methamphetamine that was recovered from the lab was in the final stages of production, (that being the removal of the impurities) the evidence supports a jury finding that 15.2 grams had been manufactured on the premises. The evidence is therefore sufficient to show that appellant manufactured methamphetamine.

In addition to proving manufacture of methamphetamine, the State must also prove beyond a reasonable doubt that the controlled substance manufactured was by aggregate weight, including any adulterants and dilutants, 400 grams or more. This element makes the manufacture of methamphetamine an aggravated offense. See Tex.Rev.Civ.Stat.Ann art 4476–15, § 4.03(c) (Vernon Supp.1989).

The State, in its brief, contends that the evidence shows that appellant "had quantities of phenylacetone and methylamine which only required that they be combined to produce methamphetamine in a quantity of 400 grams." After a thorough examination of the record we are unable to locate such evidence. The record does show that methylamine and phenylacetone were found on the premises and that, when combined, produce methamphetamine. The record, however, is devoid of any evidence to show that appellant had sufficient chemicals on hand for an output of 400 grams or more.[2] The evidence is therefore insufficient to support a conviction for the manufacture of methamphetamine of an aggregate weight of 400 grams or more.

In light of the above, the judgments of the trial court and the court of appeals are

---

1. 5.5 pounds of methylamine and 68.7 grams of phenylacetone were also recovered from the premises. A chemist for the Department of Public Safety testified that if methylamine and phenlyacetone were combined, a synthesis would occur that would produce methamphetamine.

2. At trial the State argued that since a jar recovered from the premises contained 4.9 pounds of a material consisting of 15.2 grams of methamphetamine with the remainder composed of ether and acetone, the evidence was sufficient to show manufacture of over 400 grams, including adulterants and dilutants. We hold that the presence of ether and acetone in the jar does not constitute "adulterants" and "dilutants" as those terms are used in the Controlled Substances Act, a fact attested to by the chemist under cross-examination. See *Engelking v. State*, 750 S.W.2d 213, 216 (Tex.Cr.App.1988); *McGlothlin v. State*, 749 S.W.2d 856, 859–60 (Tex.Cr.App.1988). Significantly, no evidence was offered to show that this "lab" possessed the capability of producing more than 400 grams of methamphetamine, and, in fact, the chemist testified that, at the time the lab was "seized," only the process of purification was in progress.

reversed and the cause remanded to the trial court with instructions to enter a judgment of acquittal as to the offense of unlawful manufacture of methamphetamine over 400 grams.

McCORMICK, P.J., and CLINTON, WHITE and BERCHELMANN, JJ., concur in result.