James Richard GREEN, Appellant,

v.

The STATE of Texas, State.

No. 2–95–001–CR.

Court of Appeals of Texas,
Fort Worth.

July 11, 1996.

Rehearing Overruled Aug. 15, 1996.

Discretionary Review Refused
Nov. 20, 1996.

Richard Alley, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, Betty Marshall and Charles M. Mallin, Assistant Chiefs of the Appellate Section, C. James Gibson and Bill Durkin, Assistants, Fort Worth, for Appellee.

Before CAYCE, C.J., and LIVINGSTON and DAUPHINOT, JJ.

## OPINION

CAYCE, Chief Justice.

James Richard Green was convicted by a jury of the offense of manufacture of less than twenty-eight grams of a controlled substance. TEX. HEALTH & SAFETY CODE ANN. § 481.113 (Vernon Supp.1996). Punishment was assessed by the jury at seventeen years' confinement and a $10,000 fine. In two points of error, Green complains that the evidence is insufficient to support the conviction and that the trial court improperly charged the jury on the law of parties. We overrule the points of error and affirm the judgment.

On May 8, 1991, Officer Scott Campbell, a narcotics investigator for the Fort Worth Police Department and a member of the Tarrant County Narcotics Task Force, and Officer J.L. McGee, another Fort Worth narcotics investigator, went to a house located on Highway 199 in Fort Worth, Texas to investigate a complaint. While outside the house, the officers observed Green through a window as he was standing at a stove in the kitchen. The officers also smelled a chemical odor commonly associated with the manufacture of amphetamine. Green noticed the officers and ran toward the front door where Officer Campbell caught him and placed him under arrest.

After *Miranda*[1] warnings were read to him, Green gave the officers consent to search the house. In the kitchen where Green was first seen, the officers found a small round flask wrapped in aluminum foil sitting on the stove. The stove was turned on and a liquid inside the flask was bubbling. A glass tube connected to the top of the flask emptied into a mason jar. The mason jar was later tested by a chemist and found to contain approximately 1.44 grams of amphetamine.

Upon completing the search of the house, the officers then asked Green if they had missed anything. Green replied that there was "a little stuff left over" in the "guest house," a locked building located behind Green's house. A large assortment of equipment and chemicals were found in the guest house, including more amphetamine, hydrochloric acid, acetic anhydride, and formic acid, all of which are used in the manufacture of amphetamine. In addition, the officers found two large buckets containing "wash water" used in the amphetamine manufacturing process. The officers further discovered that a garden hose ran from inside Green's guest house to a building behind a neighbor's house, and a subsequent search of the neighbor's house uncovered directions on how to manufacture amphetamine and methamphetamine.

At trial, Officer Campbell testified that Green's activity at the stove and the manner in which the flask, the tube, and the mason jar were positioned on the heated stove were consistent with the distillation (or purification) process involved in the manufacture of amphetamine. John Harris, a criminalist with the Fort Worth Police Department, testified that the manner in which the flask containing the bubbling liquid was connected to the tube and the mason jar on the heated stove, combined with the odor detected by the officers, was consistent with the preparing or processing of amphetamine by chemical synthesis.

■ In his first point of error, Green complains that the evidence is insufficient to support a conviction for manufacturing amphetamine because he was merely involved in the distillation process. He contends that this activity alone does not constitute manufacturing under section 481.002(25) of the Texas Health and Safety Code. Accordingly, Green contends the evidence supports only a conviction for the offense of unlawful possession of a controlled substance.

■ In reviewing the sufficiency of the evidence in either a direct or circumstantial evidence case, we must view the evidence in the light most favorable to the verdict. *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim. App.1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Emery v. State,* 881 S.W.2d 702, 705 (Tex.Crim.App. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995). This standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

■ The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the State's evidence or believe that the defense's evidence outweighs the State's evidence. *See Matson v. State,* 819 S.W.2d 839, 846 (Tex. Crim.App.1991); *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson,* 819 S.W.2d at 846.

■ The Texas Health and Safety Code defines "manufacture" as:

> [T]he production, preparation, propagation, compounding, conversion, or processing of a controlled substance other than marihuana, directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes the packaging or repackaging of the substance or labeling or relabeling of its container.

Tex. Health & Safety Code Ann. § 481.002(25) (Vernon 1992). The form in which a controlled substance is recovered is not determinative of whether the accused has committed the offense of manufacturing the drug. *Fronatt v. State,* 630 S.W.2d 703, 704 (Tex.App.—Houston [1st Dist.] 1981, pet. ref'd). Evidence that shows any of the procedures listed in section 481.002(25) is sufficient to support a conviction of the manufacture of a controlled substance. *Id.*

■ Although an accused's mere presence at the scene of a drug laboratory is insufficient to support a conviction for drug manufacture, it is a circumstance tending to prove guilt that, when combined with other facts, shows that the accused was a participant in the manufacture. *E.g., Brown v. State,* 757 S.W.2d 828, 829 (Tex.App.—Waco 1988, pet. ref'd) (evidence sufficient where defendants lived in mobile home three feet from trailer where drug laboratory found; their home supplied trailer with electricity; they possessed base chemicals for drug manufacture; they had key to the trailer; and a strong odor of drug manufacture was present in the trailer); *East v. State,* 722 S.W.2d 170, 171–72 (Tex.App.—Fort Worth 1986, pet. ref'd) (evidence sufficient to support a conviction for manufacturing amphetamine where two defendants were present in a mobile home that contained a drug laboratory; defendants had custody and control of the mobile home; amphetamine was found in containers in the bedroom of the home; the laboratory had been used by a third person to manufacture amphetamine; and odor associated with the manufacture of drugs was present at the time of the defendants' arrests); *Parker v. State,* 713 S.W.2d 386, 387–88 (Tex.App.—Corpus Christi 1986, no pet.) (evidence sufficient where drug laboratory paraphernalia and methamphetamine were found at defendant's home; his yard contained empty chemical bottles; the distinctive odor of drug manufacture was present; and defendant attempted to flee).

In *Goff v. State,* 777 S.W.2d 418 (Tex.Crim.App.1989), the defendant was arrested in a mobile home in which the police found a chemical catalog, information about the manufacture of methamphetamine, and a set of keys that opened the padlock on a separate building ten yards away that contained a drug manufacturing laboratory. *Id.* at 419. The methamphetamine found in the padlocked building was suspended in ether and acetone to remove the impurities. *Id.* at 420. A strong odor associated with methamphetamine production was also present at the time of the arrest. *Id.* at 419.

Holding that the evidence was sufficient to show that the defendant had manufactured methamphetamine, the court in *Goff* stated:

> Since the methamphetamine that was recovered from the lab was in the *final stages of production,* (that being *the removal of the impurities* ) the evidence supports a jury finding that 15.2 grams had been *manufactured* on the premises.

*Id.* at 420 (emphasis supplied).

Relying on the rationale of *Goff,* we find that Green's presence in the house containing the drug manufacturing equipment, combined with all of the other circumstances surrounding Green's activity, is sufficient to show that he was manufacturing amphetamine at the time of his arrest. Green was observed distilling amphetamine in an area where there was a distinct odor associated with the manufacture of amphetamine. The evidence shows that the various chemicals and equipment recovered from Green's house and the guest house are consistent with the operation of an amphetamine laboratory. Amphetamine was found in the mason jar and in other locations on the premises. Furthermore, Green had the key to the guest house where most of the equipment and chemicals were discovered, indicating that he had control and custody of the guest house and the items in it. Directions on how to manufacture amphetamine were found on the neighbor's property, which had a water hose running to Green's guest house. Based on these facts, a rational trier of fact could have found that Green was engaged in the process of manufacturing amphetamine. Point of error one is overruled.

In his second point of error, Green complains that the court improperly applied the law of parties to the facts of the case in its charge to the jury. At trial, the State relied on evidence that three individuals had been seen going in and out of Green's house the day of his arrest. Also, one of the individuals owned the neighboring house in which the directions on manufacturing amphetamine were found.

In the abstract portion of the court's charge to the jury, the law of parties was defined as follows:

All persons are parties to an offense who are guilty of acting together in the commission of an offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he or she solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

The application paragraph of the charge applied the law of parties to the facts of Green's case in the following manner:

Or, if you find from the evidence beyond a reasonable doubt that on or about the 8th day of May, 1991, in Tarrant County, Texas, *another* did intentionally or knowingly manufacture a controlled substance, namely: a material, compound, mixture or preparation containing amphetamine of less than twenty-eight grams, including any adulterants or dilutants, by producing, preparing, propagating, compounding, converting or processing said controlled substance independently by means of chemical synthesis and that James Richard Green, the defendant, then and there, acting with intent to promote or assist the commission of the offense, if any, aided or attempted to aid another to commit the offense of manufacture of a controlled substance, namely, amphetamine, if any, then you find the defendant, James Richard Green, guilty. [Emphasis supplied.]

Green's only trial objection to this charge was that the application paragraph did not identify the other party. However, in this appeal, it is unclear what Green's complaint actually is; he simply contends that the law of parties instruction "fails to properly apply the law of parties to the facts of this case."

Although Green has failed to appropriately brief his complaint concerning the propriety of the law of parties charge on appeal, *see* TEX. R. APP. P. 74(f); *State v. Gonzalez,* 855 S.W.2d 692, 697 (Tex.Crim.App.1993), we will address the law of parties objection Green

made at trial "in the interest of justice." *See* Tex. R. App. P. 74(p).

There is no requirement that the parties to a crime be identified by name in a law of parties charge. So long as the jury can look to the evidence to determine the other party's identity, it is not error to refuse a requested charge that specifically names the party. *Gordon v. State,* 714 S.W.2d 76, 77 (Tex.App.—San Antonio 1986, no pet.); *see Brewer v. State,* 852 S.W.2d 643, 644–45 (Tex. App.—Dallas 1993, pet. ref'd) (words "acting with another as a party to the offense, as that term is herein defined" were sufficient to authorize appellant's conviction as a party). In *Jones v. State,* 659 S.W.2d 492 (Tex. App.—Fort Worth 1983, no pet.), the application paragraph of the jury charge referred only to "Billy Jones, acting together with *another* as a party," but did not specify who "another" was. *Id.* at 493 (emphasis supplied). Although there was evidence that three black men had acted with the appellant in the commission of the offense, the identities of these other men was not shown. Noting that it would have been more specific if the court had used "three black males" instead of "another" in the charge, we held that the appellant was not prejudiced by the charge because the jury could look to the proof as to the others. *Id.*

The law of parties was sufficiently explained to the jury in the instant case. Based on the argument and the testimony at trial, the jury was not confused about who the other parties were. Therefore, we hold that under the facts of this case, the failure of the court to name any parties other than Green was not an improper application of the law of parties. Point of error two is overruled.

The judgment is affirmed.