

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00717-CR

Alfonso Carlos **TAMEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2014-CRM-000389-D2
Honorable Monica Z. Notzon, Judge Presiding

Opinion by:   Patricia O. Alvarez, Justice

Sitting:       Marialyn Barnard, Justice
               Patricia O. Alvarez, Justice
               Jason Pulliam, Justice

Delivered and Filed:  August 5, 2015

AFFIRMED

Alfonso Carlos Tamez was convicted by a jury of aggravated assault with a deadly weapon causing bodily injury.  On appeal, Tamez contends (1) he was denied a speedy trial, (2) the evidence is insufficient to support his conviction, (3) the jury charge was defective, and (4) the trial court abused its discretion in admitting hearsay testimony.  We affirm the trial court's judgment.

## BACKGROUND

Just before closing time, a fight broke out inside a nightclub, and the bouncers escorted those involved from the nightclub. Tamez and his two co-defendants, Francisco Javier Azuara Jr. and Jessica Ortega, arrived at the nightclub together a few minutes before the fight began, and several witnesses testified that Tamez was involved in the fight. The video surveillance recording shows Tamez, Azuara, and Ortega leave the nightclub together when the bouncers broke up the fight. Around the same time, another fight broke out in the parking lot of the nightclub involving several of the same participants. This fight was close to an exit from the nightclub's parking lot to a street. A few minutes later, gunshots were fired from the street.

Several witnesses reported the gunshots were fired by the front-seat passenger in a white Hummer. A few witnesses identified Tamez as the shooter. Other witnesses reported seeing a dark-colored SUV and the white Hummer, and one witness testified that the shooter was a man who exited the dark-colored SUV. It is undisputed that Tamez owned a white Hummer.

Tamez and Azuara were each indicted for aggravated assault with a deadly weapon as both a principal and as a party.[1] The indictment contained seven counts with a separate count for each of the seven victims who was shot. The jury found both men guilty.

## SPEEDY TRIAL

In his first issue, Tamez contends his right to a speedy trial was violated. "The Sixth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, guarantees a speedy trial to an accused." *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014) (citing U.S. CONST. amend VI). When reviewing a defendant's speedy-trial claim, we consider four factors given by the Supreme Court: "(1) the length of delay,

---

[1] Ortega also was indicted but was acquitted by the jury.

(2) the State's reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant because of the length of delay." *Id*. (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). To invoke the court's *Barker* balancing test, the accused must first show the delay between the accusation and the trial is "presumptively prejudicial." *Id*. Generally, "any delay of eight months or longer is presumptively unreasonable and triggers [a] speedy trial analysis." *Zamorano v. State*, 84 S.W.3d 643, 649 n.26 (Tex. Crim. App. 2002).

### A. Standard and Scope of Review

When applying the *Barker* test,

> a reviewing court uses the same burden of proof allocation as in the context of a motion to suppress. That is, we give almost total deference to historical findings of fact of the trial court that the record supports and draw reasonable inferences from those facts necessary to support the trial court's findings, but we review de novo whether there was sufficient presumptive prejudice to proceed to a *Barker* analysis and the weighing of the *Barker* factors, which are legal questions.

*Id.* at 808–09. We do not consider any "record evidence that was not before the trial court when it made its ruling." *Id*. at 809.

### B. Presumptive Prejudice and Length of Delay

We measure "[t]he length of the delay . . from the time the accused is arrested or formally accused." *Id*. (citing *United States v. Marion*, 404 U.S. 307, 313 (1971)). "When the length of delay stretches well beyond the bare minimum needed to trigger a full *Barker* analysis, the length of a delay weighs against the State, and the longer the delay, the more the defendant's prejudice is compounded." *Id*. (footnote omitted). As the length of the delay increases, we weigh the delay more heavily against the State "because 'the presumption that pretrial delay has prejudiced the accused intensifies over time.'" *Id*. (quoting *Zamorano*, 84 S.W.3d at 649).

In this case, Tamez was arrested on August 6, 2013, and his trial commenced on July 21, 2014—an almost twelve month delay. Because this delay exceeded eight months, the delay is

presumptively prejudicial. *See Zamorano*, 84 S.W.3d at 649 n.26. The delay did not, however, extend far beyond the minimum time require to trigger a full *Barker* analysis. As a result, this factor weighs against the State, but it weighs less heavily than would a longer delay. *See Gonzales*, 435 S.W.3d at 809 (noting length of delay weighs heavily against the State when delay extends far beyond time required to trigger analysis).

**C.      Reason for the State's Delay**

In evaluating the reasons for the delay, "we assign different weights to different reasons." *Id*. A deliberate delay by the State in an effort to hamper the defense weighs heavily against the State, while a more neutral reason, such as overcrowded dockets or negligence, weighs less heavily. *Id*. Finally, a valid reason may serve to justify an appropriate delay so that the delay does not weigh against the State. *Id*. at 809–10.

In its brief, the State asserts the record indicates the reason for the delay was to facilitate a joint trial of all co-defendants; however, the State does not provide any record citation to support this assertion. Instead, the record establishes that an indictment was not returned against Tamez until March 26, 2014, almost eight months after his arrest. The record does not indicate the reason for this delay.

On April 2, 2014, Tamez filed his motion for speedy trial, and the trial court held a hearing on the motion on April 11, 2014. At the hearing, the trial court set an expedited trial date of June 23, 2014, with pretrial dates of April 29, 2014, May 8, 2014, May 27, 2014, and June 16, 2014. The two-month delay between the hearing on Tamez's motion and the initial trial date, therefore, is attributable to the trial court's docket and does not weigh heavily against the State. Finally, the one month continuance between the initial trial date of June 23, 2014, and the actual trial date of July 21, 2014, was based on the State's motion for continuance so that all three co-defendants could be jointly tried. The need for a joint trial is a valid reason which justifies the one-month

delay. *See Gonzales*, 435 S.W.3d at 809–10 (noting valid reasons may justify delay); *United States v. Franklin*, 148 F.3d 451, 457 (5th Cir. 1998) (holding delay necessary to achieve a joint trial was excludable from speedy trial analysis).

Given the unexcused eight-month delay between Tamez's arrest and the indictment, this factor weighs against the State. However, the record does not establish that the delay was an effort to hamper the defense, and this factor does not weigh heavily against the State. *See Gonzales*, 435 S.W.3d at 809.

**D.      Assertion of the Right**

"Whether and how a defendant asserts his speedy trial right is closely related to the other three factors because the strength of his efforts will be shaped by them." *Zamorano*, 84 S.W.3d at 651. If a defendant asserts this right, "the defendant's assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. Conversely, a failure to assert the right makes it difficult for a defendant to prove that he was denied a speedy trial." *Id*.

Tamez did not file his motion for speedy trial until April 2, 2014, about eight months after his arrest. In his motion, Tamez prayed for the trial to be scheduled before August of 2014. A hearing was held on the motion on April 11, 2014, and the trial court immediately set the trial for June 23, 2014. Accordingly, this factor weighs heavily against Tamez.

**E.      Prejudice Caused by the Delay**

"'Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect.'" *Zamorano*, 84 S.W.3d at 652 (quoting *Barker*, 407 U.S. at 532). "The Supreme Court has identified three such interests: 1) to prevent oppressive pretrial incarceration; 2) to minimize anxiety and concern of the accused; and 3) to limit the

possibility that the defense will be impaired." *Id*. (citing *Barker*, 407 U.S. at 532). "[T]he last type of prejudice is the most serious . . . ." *Id*.

In his motion for speedy trial, Tamez states he "will be prejudiced should trial not be held on or before August 2014." In his brief, Tamez states he was prejudiced by being forced to be tried with his co-defendants. Facilitating the joint trial only required a one-month continuance from his initial trial date; therefore, that "prejudice" is not attributable to the twelve-month delay which triggered the full *Barker* analysis. Given Tamez's admission in his motion that he would not be prejudiced if trial was held before August of 2014, this factor weighs against Tamez.

## F.     Balancing the Factors

Although the State's failure to explain the reason for the delay in returning the indictment weighs against it, the actual delay only extended four months beyond the minimum delay required to trigger a speedy trial analysis. *See Zamorano*, 84 S.W.3d at 649 n.26. Tamez's failure to timely assert his right, however, weighs heavily against him as does the absence of prejudice to him. Therefore, balancing all of the *Barker* factors, we hold Tamez's speedy trial right was not violated, and his first issue is overruled.

SUFFICIENCY

In his second issue, Tamez contends the evidence is insufficient to support his conviction as either a principal or a party.

## A.     Standard of Review

In reviewing the sufficiency of the evidence, "we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011). "This standard recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence." *Id*. The reviewing court must also give deference to

the jury's ability "'to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* (citing *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1985)).

In addressing his sufficiency issue, Tamez also argues the jury charge only allowed the jury to convict him as a party, not as a principal. Contrary to this argument, however, we conduct our review by measuring the evidentiary sufficiency with reference to the elements of the offense as defined by the hypothetically correct jury charge for the case. *Adames*, 353 S.W.3d at 860–61. "[A] hypothetically correct jury charge is one that . . . 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The law "'as authorized by the indictment'" consists of "'the statutory elements of the offense . . . as modified by the charging instrument.'" *Id.* (alteration in original) (quoting *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000)). Therefore, in this case, because the indictment authorized Tamez to be convicted as either principal or party, we may consider the sufficiency of the evidence under either or both of those theories. *See Garza Vega v. State*, 267 S.W.3d 912, 915–16 (Tex. Crim. App. 2008); *Swartz v. State*, 61 S.W.3d 781, 785 (Tex. App.—Corpus Christi 2001, pet. ref'd).

**B.      Elements of the Offense**

The offense of aggravated assault with a deadly weapon causing bodily injury is committed if a person (1) "intentionally, knowingly, or recklessly causes bodily injury to another" and (2) "uses or exhibits a deadly weapon." TEX. PENAL CODE ANN. §§ 22.01(a) (West 2011), 22.02(a)(2)

(West Supp. 2014); *accord Ex Parte Denton*, 399 S.W.3d 540, 546–47 (Tex. Crim. App. 2013); *see also Graves v. State*, 452 S.W.3d 907, 916 (Tex. App.—Texarkana 2014, pet. ref'd); *Zapata v. State*, 449 S.W.3d 220, 224–25 (Tex. App.—San Antonio 2014, no pet.). As previously noted, the indictment authorized Tamez's conviction if he acted alone or as a party. Generally, a person is criminally responsible as a party if the person, acting with intent to promote or assist the commission of the offense, solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *See* TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011). The abstract portion of the charge in the instant case incorporated this definition of a party. The application paragraphs of the jury charge, however, narrowed the specific mode of party liability to "aiding." *See Vasquez v. State*, 389 S.W.3d 361, 368 (Tex. Crim. App. 2012) (holding, upon request, defendant is entitled to narrowing of specific modes of conduct that constitute party liability to those supported by the evidence). Because the jury charge narrowed the specific mode of conduct to aiding, Tamez could be convicted as a party only if the evidence supported a finding that he aided another in committing the offense.

## C. Analysis

As previously noted, the evidence is undisputed that Tamez owned a white Hummer. In addition, in Tamez's own statement to the investigating officers, he admitted he arrived at the nightclub in his white Hummer with Azuara and Ortega. In addition to Tamez's admission, Maria Santos also testified she observed Tamez arrive at the nightclub in his white Hummer. Finally, Tamez, Azuara, and Ortega later returned to the nightclub in the white Hummer after receiving a phone call from the wife of one of the victims accusing Tamez of being involved in the shooting. Tamez returned to the nightclub to speak with the detectives and to encourage them to search the vehicle.

Alejandro Carreon testified the shots were fired from the street. Officer Aldo Alaniz testified Maria Santos told him an individual who had been involved in the fight inside the nightclub fired the shots from a white SUV.[2] Both Carreon and Leonel Perez testified Tamez was involved in the fight inside the nightclub. Perez heard the gunshots fired from the street and saw a hand wrapped in a white shirt shooting from the front passenger window of a white Hummer.[3] Jose Arturo Garcia also testified he saw a white Hummer drive away after the shooting. Finally, Jonathan Santos, one of the victims, gave a statement in which he stated Tamez shot him and then left in a white Hummer. At trial, Jonathan Santos only testified that the "girl at the door," who was Maria Santos, told him Tamez was the one shooting, not that he saw Tamez shooting. The jury, however, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Adames*, 353 S.W.3d at 860. Jonathan Santos also testified he received threats from Tamez's girlfriend.

Although there was conflicting evidence about the involvement of a dark-colored SUV and the passenger of that vehicle exiting and shooting, the jury could have chosen to disbelieve this testimony. Moreover, although the test results for gunshot residue on Tamez, Azuara, and the white Hummer were negative, the jury was required to weigh the time that elapsed between the shooting and their return to the scene of the crime. The jury also was required to weigh the evidence that the shooter's hand was wrapped in a white shirt, the evidence that Tamez is shown in the surveillance video as removing his white shirt while exiting the nightclub, and the evidence that Tamez and Azuara showered and changed clothes before returning to the scene.

---

[2] During her testimony, Maria Santos denied making these statements to the officer, but the jury is the sole judge of the credibility of the witnesses. *Adames*, 353 S.W.3d at 860.

[3] Although defense counsel attempted to impeach Perez based on details omitted from his initial statement, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.*

Based on the foregoing, we conclude the evidence is legally sufficient to support the jury's finding that Tamez was guilty of the offense as a principal.

JURY CHARGE

In his third issue, Tamez contends the trial court erred in submitting a jury charge that failed to (1) name the principal he aided as a party and (2) identify the conduct by which he aided the principal.[4] The State responds the application paragraph is not required to identify the principal actor, and it would be improper for the trial court to identify the facts establishing aiding in the jury charge.

## A.    Standard of Review

We apply a two-step analysis to an issue asserting jury charge error. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). First, we determine whether error existed in the jury charge. *Id.*; *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). Second, we determine whether sufficient harm was caused by the error to require reversal. *Kirsch*, 357 S.W.3d at 649; *Ngo*, 175 S.W.3d at 744.

## B.    Naming of Principal

Tamez first asserts the trial court erred in failing to name the principal in the application paragraph of the jury charge. The trial court is not, however, required to identify the parties to a crime by name in a law of parties charge. *See Moore v. State*, 983 S.W.3d 15, 21 (Tex. App.—Houston [14th Dist.] 1998, no pet.); *Green v. State*, 930 S.W.2d 655, 659 (Tex. App.—Fort Worth

---

[4] In briefing the jury charge issue, Tamez's brief makes reference to the State's closing argument, asserting, "the State never argued conviction based on the law of parties during their closing argument and instead argued the Appellant was responsible as a principal." Tamez's brief does not, however, raise the argument that the application paragraph of the jury charge did not contain a principal theory of liability. Because this issue is not properly briefed, we do not further address it. *See* TEX. R. APP. P. 38.1(i).

1996, pet. ref'd); *Gordon v. State*, 714 S.W.2d 76, 77 (Tex. App.—San Antonio 1986, no pet.). Accordingly, this contention is overruled.

**C.      Identifying Conduct by which Principal was Aided**

Tamez next asserts the jury charge failed to identify the conduct by which the principal was aided.  In support of this assertion, Tamez primarily relies on *Vasquez v. State*, 389 S.W.3d 361 (Tex. Crim. App. 2012).  In *Vasquez*, however, the Texas Court of Criminal Appeals only held, on a defendant's request, the trial court must narrow the statutory modes of conduct that constitute party liability to those supported by the evidence.  *Id.* at 368.  The statutory modes referred to by the court are the bases upon which a defendant may become a party, i.e., by soliciting, encouraging, directing, aiding, or attempting to aid the other person.  *Id*.; *see also* TEX. PENAL CODE ANN. § 7.02(a)(2).  In this case, the trial court complied with *Vasquez* because the jury charge narrowed the statutory mode of conduct in the application paragraph of the charge to aiding.

Tamez appears to be arguing that the trial court was required to identify the specific facts in the case that would support a finding of aiding and incorporate those facts into the jury charge. A jury charge is not permitted to comment on the weight of the evidence, sum up the testimony, or discuss the facts.  TEX. CODE CRIM. PROC. ANN. art.  36.14 (West 2007) ); *Kirsch*, 357 S.W.3d at 651.  A jury charge identifying the evidence by which a party aided a principal violates each of these prohibitions because the trial court would be commenting on the weight of the evidence in support of a finding of aiding, summarizing the testimony, and discussing the facts.  *See Walters v. State*, 247 S.W.3d 204, 212 (Tex. Crim. App. 2007) (noting a trial court comments on the weight of the evidence where the charge focuses the jury's attention on the specific type of evidence that may support a required finding); *Lacaze v. State*, 346 S.W.3d 113, 118 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (noting a trial court comments on the weight of the evidence if the jury

charge "directs undue attention to particular evidence" (internal quotation marks omitted)). Accordingly, Tamez's assertion that the jury charge should have identified the conduct by which he aided the principal is incorrect. *See Kirsch*, 357 S.W.3d at 651.

Tamez's third issue is overruled.

**HEARSAY**

In his final issue, Tamez contends the trial court abused its discretion in admitting hearsay testimony. The State responds the testimony was properly admitted under the excited utterance exception to the hearsay rule.

### A. Standard of Review

We review a trial court's ruling regarding the admissibility of evidence under an abuse of discretion standard. *Blasdell v. State*, 384 S.W.3d 824, 829 (Tex. Crim. App. 2012). Under this standard, a reviewing court may not reverse the trial court's ruling unless it falls outside the zone of reasonable disagreement. *Id.* We will uphold the trial court's decision if it is supported by the record and is correct under any theory of applicable law. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).

### B. General Hearsay Rule and Excited Utterance Exception

A statement that a declarant does not make while testifying in court which is offered to prove the truth of the matter asserted in the statement is hearsay and is generally inadmissible. *See* TEX. R. EVID. 801(d), 802; *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995). An exception to this general rule exists, however, for excited utterances. *See* TEX. R. EVID. 803(2); *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Gonzalez v. State*, 155 S.W.3d 603, 606 (Tex. App.—San Antonio 2004), *aff'd*, 195 S.W.3d 114 (Tex. Crim. App. 2006). An excited utterance is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that [the event or condition] caused." TEX. R. EVID. 803(2); *see also*

*Coble v. State*, 330 S.W.3d 253, 294 (Tex. Crim. App. 2010). The critical question in applying the excited utterance exception is "whether the declarant was still dominated by the emotion caused by the startling event when she spoke." *Coble*, 330 S.W.3d at 294.

## C.      Hearsay Testimony

During trial, one of the investigating officers listed the individuals at the scene who provided information to him. The officer stated the individuals were all employees of the club and were all frightened or shaken up by the event. The officer then testified as follows:

> Q.  Now, what about Maria Santos—how did she appear to you at the time?
>
> A.  Pretty frightened, shaking, everybody was like scared.
>
> Q.  Now, from the time that you arrived and you were able to make contact with Maria Santos, approximately how much time had elapsed from the time that you arrived to the time that you spoke to her?
>
> A.  Maybe 10 or 15 minutes.
>
> Q.  You say it was fairly close to the time of the shooting?
>
> A.  Yes.
>
> Q.  Now, Officer Alaniz, did she, in her frightened state, did she say anything to you as to what she might have heard or what she saw?
>
> [Defense counsel]: Objection, hearsay, Your Honor.
>
> THE COURT:  Overruled.   You can answer.
>
> A.  She stated to me that she had seen a white SUV that committed—that fired the shots.
>
> Q.  And did she say anything else to you?
>
> A.  (Reviewing report) That the individuals that had shot at the civilians were involved in a fight inside the bar.

## D.      Analysis

In this case, Maria Santos watched as multiple victims—many of whom were fellow employees—were shot and then collapsed in the parking lot. The officer testifying was the first officer on the scene and arrived only minutes after the shooting. The officer stated he spoke with Maria Santos ten or fifteen minutes after his arrival while she was still frightened, shaking, and

scared. Based on this testimony, we conclude the trial court could have found that Maria Santos "was still dominated by the emotion caused by the [shooting] when she spoke." *Coble*, 330 S.W.3d at 294. Accordingly, the trial court did not abuse its discretion in admitting the officer's testimony under the excited utterance exception to the general hearsay rule.

## CONCLUSION

The trial court's judgment is affirmed.

Patricia O. Alvarez, Justice

DO NOT PUBLISH