In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-00-516 CR


____________________



DONALD EDGAR MEANOR, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 411th District Court


San Jacinto County, Texas


Trial Cause No. 8247






O P I N I O N


 A jury found Donald Edgar Meanor guilty of manufacturing a controlled substance,
methampehtamine, and assessed his punishment at ten years' confinement in the Texas
Department of Criminal Justice, Institutional Division. After Meanor perfected appeal to
this Court, his appellate counsel filed a brief in compliance with Anders v. California, 386
U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and High v. State, 573 S.W.2d 807 (Tex.
Crim. App. 1978), concluding there was no arguable error to support an appeal. Meanor
then filed a pro se brief. 

 As we construe his issues, Meanor first attacks the sufficiency of the evidence,
complaining that Philip Cash, a principal prosecution witness, was not an expert in the
manufacturing of illegal drugs, and, further, that Cash's testimony was contradictory. In
addition, Meanor complains: he received ineffective assistance of counsel; the trial court
erred in admitting certain evidence, i.e. a receipt for the purchase of a substance that could
be used in the manufacturing of methamphetamine; the trial court erred in not including a
circumstantial evidence charge; and neither he nor this Court have received a full and
complete record of the proceedings below.

 The events leading to Meanor's arrest and conviction began when the Central East
Texas Narcotics Task Force, based on a tip, established surveillance on the home of Walter
Ballard, Meanor's co-defendant. Philip Cash, an undercover investigator for the task force,
testified Ballard was followed from his home to Walmart, where he was observed
purchasing psuedophedrine and gun scrubber, substances that may be used in making
methamphetamine. Ballard returned to his home and Meanor arrived there at approximately
7:45 p.m. Cash further testified that no one else other that Ballard or Meanor was seen
entering or leaving the house during the surveillance. Around midnight, both Meanor and
Ballard left the house, went to a convenience store where they purchased beverages, and
returned to the house. Cash and two other officers continued their surveillance of the
residence, and observed that lights stayed on there throughout the night. Having earlier
obtained a search warrant, the law enforcement officers entered the house at approximately
5:45 a.m. 

 Upon entry, the officers found an operating methamphetamine lab in the master
bedroom. Task force investigator Clint McCray was the first officer inside the house. Two
to three seconds after his entry, McCray found Meanor and Ballard walking out of the room
containing the lab. Meanor and Ballard were the only persons present in the house. 
McCray, who had participated in numerous methamphetamine lab investigations, testified
the "chemical smell" inside the house was "horrific;" it was a smell, McCray stated, that
"most of the methamphetamine labs produce." Charles Perkins, another investigator and
the second officer to enter Ballard's house, also testified he saw Meanor and Ballard coming
out of the bedroom that contained the lab.

 During a search of Meanor's truck, the officers found a receipt for the purchase of 
of gun cleaner, a chemical compound that could be used in manufacturing
methamphetamine. Claiming surprise, Meanor objected to admission of the receipt as
evidence. The prosecutor acknowledged that the receipt had not been turned over to
Meanor's counsel when the state complied with the court's standard discovery order. 
Further, the prosecutor advised the court that he did not obtain the receipt until the
Thursday before trial, and he did not inform Meanor's counsel about its existence until the
morning the receipt was offered as evidence. The trial court admitted the receipt over
Meanor's objection.

 Next, Meanor contended the receipt was obtained as the result of an illegal search,
and should be excluded. Meanor argued the search warrant did not authorize a search of
his vehicle. The prosecutor acknowledged the search warrant did not mention vehicles. 
The trial court initially sustained Meanor's objection, but changed its ruling after Officer
Perkins testified Meanor verbally consented to the search.

 We first consider Meanor's sufficiency arguments. When we review the legal
sufficiency of the evidence, we must determine whether, after considering the evidence in
the light most favorable to the jury's verdict, any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443
U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Santellan v. State, 939 S.W.2d 155,
160 (Tex. Crim. App. 1997). As fact finder, the jury weighs the evidence, assesses the
witnesses' credibility, and reconciles any conflicts in the evidence. See Whitaker v. State,
977 S.W.2d 595, 598 (Tex. Crim. App. 1998). When evaluating the sufficiency of the
evidence, the reviewing court must look at all the evidence, whether properly or improperly
admitted. Bobo v. State, 843 S.W.2d 572, 575-76 (Tex. Crim. App. 1992).

 In reviewing the factual sufficiency of the evidence, we conduct a neutral review of
all of the evidence. See Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). A
factual insufficiency issue should be sustained if the review shows either the evidence is
factually insufficient to support a finding of a vital fact, or the finding of a vital fact is so
contrary to the great weight and preponderance of the evidence as to be clearly wrong. See
Goodman v. State, 66 S.W.3d 283, 285 (Tex. Crim. App. 2001) (quoting Justice Robert
W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. L. Rev.
361, 366 (1960)). Unless the record clearly reveals a different result is appropriate, we
defer to the fact finder's determination of what weight to give contradictory testimony
because that determination often turns on an evaluation of credibility and demeanor. See
Johnson, 23 S.W.3d at 8. It is the fact finder, not the reviewing court, that accepts or
rejects reasonably equal theories of causation. See Goodman, 66 S.W.2d at 287.

 Mere presence at the scene of a drug laboratory is insufficient to support an
accused's conviction for drug manufacturing. However, such presence is a circumstance
that tends to prove guilt when combined with other facts showing the accused participated
in the manufacturing. See Green v. State, 930 S.W.2d 655, 657, (Tex. App.--Fort Worth
1996, pet. ref'd).

 Here, the State's evidence showed more than "mere presence." Meanor was found
exiting the room containing the operating lab. He and Ballard were the only persons
present in the house. Officer Cash (1) testified that a minimum of two persons usually were
required for the manufacturing process. He further explained it was possible for one person
to complete the process, but not recommended because of the danger involved and loss of
product that could occur with one person attempting the process alone. (2) The house was
filled with the distinctive odor associated with the manufacture of methamphetamine. 
Containers removed from the house contained methamphetamine. In Meanor's truck,
officers found a receipt for a substance that could be used in the manufacturing process.

 In his defense, Meanor offered the testimony of two witnesses. Donald Ballard,
Meanor's father, testified Meanor did not leave Houston until after 9:30 p.m. on the
evening in question, thus calling into question the officer's testimony regarding the time
Meanor's arrival at Ballard's shortly before 8 p.m. In addition, Walter Ballard, Meanor's
co-defendant, testified that Meanor had not assisted in the manufacturing of the
methamphetamine; had "no idea" what was "going on;" and had not even been in the
bedroom where the lab was located. According to Walter, Meanor had come to Walter's
home for assistance on a writ Meanor planned to file with the Court of Criminal Appeals.

 The evidence was both legally and factually sufficient. Based on Cash's testimony
about the number of persons usually needed to run a lab, and McCray's testimony regarding
the odor in the house and Meanor's exiting the room where the lab was located, the jury
rationally could have found Meanor was guilty beyond a reasonable doubt of manufacturing
a controlled substance. Further, the State's evidence is not so factually weak that it fails
to support the verdict, and neither is appellant's evidence so strong that it renders the jury's
verdict "so contrary to the great weight and preponderance of the evidence" as to be
manifestly unjust. See Goodman, 66 S.W.3d at 286-87. Here, there was contradictory
testimony, but the record does not clearly show a different result is appropriate. Thus, we
defer to the jury's determination of what weight to give contradictory testimony and
whether to believe other theories or explanation offered by the accused. See id. We
overrule Meanor's legal and factual sufficiency issues.

 We next consider whether the trial court erred in admitting the receipt for the
purchase of gun cleaner. Consent to search is a "well-established" exception to the
constitutional requirements of both a warrant and probable cause. See Carmouche v. State,
10 S.W.3d 323, 331 (Tex. Crim. App. 2000). For consent to search to be valid under the
Fourth Amendment, it must be voluntary; voluntariness must be shown by clear and
convincing evidence. See Carmouche, 10 S.W.3d at 331. Here, at the time the receipt was
offered, the only evidence before the trial court was the testimony of Officer Perkins who
stated Meanor verbally consented to the search. (3) Thus, the trial court did not err in
admitting the evidence, and we overrule Meanor's issue in this regard. 

 In order for Meanor to prevail on his ineffective assistance of counsel claim, he must
show both deficient conduct and prejudice. In other words, he must demonstrate that his
attorney's performance fell below an objective standard of reasonableness under prevailing
professional norms and that there is a reasonable probability that but for counsel's
ineffectiveness, the result would have been different. See Strickland v. Washington, 466
U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There is a strong
presumption that counsel's conduct fell within the wide range of reasonable professional
assistance. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). "Any
allegation of ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness." Thompson v. State, 9 S.W.3d 808,
813 (Tex. Crim. App. 1999). 

 Meanor complains that: 1) defense counsel failed to file a motion to suppress the
receipt evidence and (2) counsel failed to either discuss the case with Meanor or provide
copies of the case file to him. While defense counsel apparently did not file a motion to
suppress the late-presented receipt evidence, he made an effort to exclude it, arguing at
length against its admission. As to Meanor's remaining complaints about trial counsel's
lack of communication skills, Meanor does not explain how these actions affected his trial. 
Absent an evidentiary hearing in which defense counsel is provided the opportunity to explain
his actions, and in which Meanor is able to fully develop evidence supporting his claim of
ineffective assistance, Meanor cannot overcome the presumption that counsel rendered
reasonably effective assistance. Moreover, Meanor does not establish that but for counsel's
conduct, the result would have been different. Appellant's ineffective assistance of counsel
issues are overruled.

 As to Meanor's claim that the trial court erred in not including a circumstantial
evidence charge, this issue or has not been preserved for our review, see Tex. R. App. P. 33.1,
and is overruled.

 As to Meanor's claim that neither he nor this Court have received a full and complete
record of the proceedings below, he refers to a "Habeas Corpus and the sworn affidavit of
Walter Harvey Ballard, Jr." and to a "copy of the search warrant." However, as none of these
documents were admitted into evidence, they are not part of the appellate record. See Tex.
R. App. P. 34.6 (c)(5). Further, Meanor fails to explain how any of these documents would
aid the Court. See Tex. R. App. P. 38.1(h). Meanor's issue regarding an incomplete record
is overruled. 

 We have reviewed the record available to appellate counsel in preparing Meanor's
appeal. Appellate counsel's Anders brief concludes no error arguably supporting an appeal
is presented, a conclusion with which we concur. Our review of the clerk's record and the
reporter's record revealed no arguable error requiring us to order appointment of new counsel. 
Stafford v. State, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991). Accordingly, we affirm the
judgment of the trial court. 

 AFFIRMED.

 PER CURIAM


Submitted on January 7, 2002 

Opinion Delivered May 15, 2002

Do not publish 


Before Walker, C.J., Burgess, and Gaultney, JJ.

1. Cash received drug training from the Department of Justice, is "lab certified" by
the DEA, and has also received FBI training regarding the investigation of clandestine labs
and the prosecution of cases resulting from such investigation. He also has received
specialized training on methamphetamine and often works with other law enforcement
agencies on methamphetamine cases. 
2. Meanor contends Cash's testimony regarding the necessity of two persons for
manufacturing operation is contradictory. 
3. Though not clear from the record before us, it appears the trial court heard
Meanor's objections to the evidence outside the presence of the jury, but Meanor did not
testify on the consent issue. Then the jury was permitted to hear Perkins's testimony on
consent, as well as Ballard's version in which he stated he did not hear Meanor consent,
and he "would have overheard it, but there was a lot of commotion going on at the time." 
On cross examination, Ballard stated: "All I can say, I never heard him give consent."
The jury was instructed to disregard the receipt evidence if it found consent was not
voluntarily given.