NO.
12-04-00262-CR

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

 

 

HAROLD JOHN ADAMS, JR.,       §          APPEAL
FROM THE 392ND

APPELLANT

 

V.        §          JUDICIAL
DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE   §          HENDERSON
COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



MEMORANDUM OPINION

            Harold John
Adams, Jr. appeals his conviction for the manufacture of between two hundred
and four hundred grams of methamphetamine, for which he was sentenced to
imprisonment for thirty years and fined ten thousand dollars.  Appellant raises fourteen issues on
appeal.  We reform the trial court’s
judgment and affirm as reformed.

 

Background

            Appellant
was charged by indictment with one count of manufacturing between two
hundred  and four hundred grams of methamphetamine
and one count of possession of between two hundred and four hundred grams of
methamphetamine.  The indictment
contained an enhancement paragraph concerning a prior conviction for possession
of a controlled substance.[1] 
Appellant pleaded “not guilty” to the charges, and the matter proceeded
to jury trial.








            At
trial, Gun Barrel City Police Department Investigator Patrick Johnson testified
as the State’s first witness.  Johnson
testified that on March 21, 2003, he was contacted by a reliable confidential
informant who told him that Donald Penix was manufacturing methamphetamine in a
small tent behind a residence owned by Renee Myer in Henderson County,
Texas.  The informant made reference to
another individual with regard to Penix’s activities at the Myer residence, but
could not identify or describe that other person.  Johnson and Henderson County Sheriff’s
Department Investigator Joseph Miller gathered a group of officers and
proceeded to the Myer residence.

            Johnson
testified that upon their arrival at the Myer residence, he had an unobstructed
view of the portion of the backyard where the tent was located.  Johnson stated that as he and other officers
approached, he observed two white males run from the tent in the backyard into
a wooded area behind the house.[2] 
Johnson identified the two men as Appellant and Penix.  Johnson further stated that Appellant was
wearing blue jeans, but was not wearing a shirt. 

            According
to Johnson, Officer Kevin Hanes shouted at Appellant to stop, but Appellant
continued to flee, scaled a barbed wire fence in the backyard, and ran across a
pasture into the wooded area behind the residence.  Hanes and Johnson ultimately apprehended
Appellant approximately one quarter mile from the Myer residence.  Penix was detained in the nearby pasture by Officers
Jeremy Scruggs and Anthony Holmes.

            Investigator
Miller testified as the State’s next witness. 
Miller testified that he looked inside the tent and observed (1) a
plastic bowl with a doughy mixture in it, (2) a blue pitcher with a metal
strainer and a cloth on top of it that contained a liquid substance, (3) a
loaded .357 magnum handgun lying on a chair, and (4) a black bag containing
clothing.  Miller also stated that a
shirt found close to a nearby tree was likely to be Appellant’s size since
Penix was a much larger individual, weighing approximately three hundred
pounds.[3]  Miller further stated that he saw no other
person in the backyard other than Appellant and Penix.  Miller testified that he detected the
familiar odor of anhydrous ammonia emanating from the tent, which, among other
factors, caused him to later contact the Department of Public Safety (“DPS”)
Lab in Tyler, Texas to investigate the scene.

            Miller
further testified that he obtained oral consent from Myer to search her
residence.  Miller stated that once
inside the residence, he discovered marijuana, numerous pseudoephedrine  boxes in the clothes dryer, two pill
grinders, scales, plastic baggies, firearms, syringes, and numerous other drug
related items.  Miller further stated
that Hanes located a syringe containing a brownish liquid on Appellant at the
time of his arrest that was identical to the syringes Miller discovered in the
residence.  Miller testified that
thereafter, Appellant, Penix, and Myer were all arrested for manufacture of a
controlled substance.

            Dennis
Pridgen and Reuben Rendon of the DPS crime lab in Tyler, Texas responded to
Miller’s request for assistance.  At
trial, Pridgen, testified that he was the drug section supervisor for the DPS
crime lab in Tyler.  Pridgen stated that
at the scene, as he approached the tent, he detected the strong odor of ammonia
that is associated with anhydrous ammonia, a common ingredient in the
manufacture of methamphetamine.  Pridgen
described the tent as a methamphetamine lab and further stated that from the
items located in the tent, it appeared as though “they were in the process of
producing and extracting methamphetamine” in the tent.  Pridgen collected evidence from the blue
pitcher, the plastic bowl, and the straining cloth found inside the tent.  He further testified that many of the items
located in the tent were consistent with items commonly found at clandestine methamphetamine
lab sites. 

            Pridgen
further testified that he examined evidence in the Myer residence.  Pridgen testified that items located in the
residence such as crushed ephedrine or pseudoephedrine tablets, precut strips
of tinfoil, drain opener, coffee grinders with powder residue on them, and
mineral spirits were commonly used in the methamphetamine manufacturing
process.  Other such items were located
in the backyard of the Myer residence including Coleman fuel, a garden sprayer,[4]
starting fluid cans, and a propane tank. 
Pridgen later tested the substances found in the plastic bowl and the
metal strainer located atop the blue pitcher. Pridgen testified that these
substances contained methamphetamine.[5]

            Myer
was the State’s final witness.  Myer
testified that she lived at the residence behind which the tent containing the
methamphetamine lab was located.  Myer
stated that Appellant had been living in the tent for approximately four days
before the date in question.  Myer
further stated that it was common for Penix to spend time at her residence and
that he had spent the night there the night before he was arrested.  Myer testified that she was a methamphetamine
user.  Myer further testified that three
days before the officers discovered the tent, Penix asked her if he could smoke
the bones to try to get a second pull out of them.  According to Myer this meant to try to get
more methamphetamine out of the substance left over from the manufacture of a
previous batch by putting the substance through a second manufacturing
process.  Myer further testified that
Appellant was with Penix when he asked her this question and that she told
Penix that it would be alright if he would get rid of it immediately after he
finished.  Myer stated that in the days
leading up to the arrest, she observed Appellant walking around with a handgun
similar to the one discovered by officers in the tent.  Myer described Appellant’s actions as “patrolling”
or “guarding.”








            After
Myer’s testimony, the State rested. 
Appellant moved for a directed verdict, which the trial court
denied.  Thereafter, Appellant
rested.  Following the argument of
counsel, the jury found Appellant guilty of the count of manufacturing of a
controlled substance and made a finding that Appellant used or exhibited a
deadly weapon.  After a trial on
punishment, the jury assessed Appellant’s punishment at imprisonment for thirty
years and a ten thousand dollar fine. 
The trial court sentenced Appellant accordingly, and this appeal
followed.      

 

Verdict and
Judgment

            In
his first issue, Appellant argues that the verdict is defective in that the
jury failed to make a finding on the offense of possession of a controlled
substance as charged in the indictment. 
In his second issue, Appellant argues that the jury’s failure to make a
finding concerning a charged offense subjects him to double jeopardy in
violation of his constitutional rights. 

            The
charge presented to the jury read as follows:

 

            You
are instructed that you shall make only one finding on this verdict
form.  

 

VERDICT
FORM

 

We,
the jury, find the Defendant, Harold John Adams, Jr., not guilty.

 

 

                                                                                                _____________________________________

                                                                                                Foreperson

 

-OR-

 

We,
the Jury, find the Defendant, Harold John Adams, Jr., guilty of manufacture of
a material, compound, mixture or preparation containing a controlled substance
in an amount of 200 grams or more but less than 400 grams, as charged in count
one of the indictment.

 

 

                                                                                                _____________________________________

                                                                                                Foreperson

 

                

                                                                                                -OR-

 

 

We,
the Jury, find the Defendant, Harold John Adams, Jr., guilty of possession of a
controlled substance in an amount of 200 grams or more but less than 400 grams,
as charged in count two of the indictment.

 

 

                                                                                                _____________________________________

                                                                                                Foreperson

 

The jury found Appellant guilty of
manufacture of a controlled substance and, as instructed in the charge, made
only that one finding.

            If
the charging instrument contains more than one count, the jury shall be
instructed to return a finding of guilty or not guilty in a separate verdict as
to each count and offense submitted to them.  Tex.
Code Crim. Proc. Ann. art. 37.07 § 1(c) (Vernon Supp. 2005).  Where the court submits one of several counts
charged to the jury, such is tantamount to an acquittal of the other counts not
submitted and amounts to an election by the state to rely on the count
submitted.  See Berwick v. State,
149 Tex. Crim. 372, 194 S.W.2d 768, 770 (Tex. Crim. App. 1946).  Moreover, if the State alleges two or more
offenses in separate counts in a single indictment and refuses to make an
election, the court may, instead of compelling an election, submit each of the
counts to the jury with the instruction that a conviction could be had on only
one of them.  See Crocker v. State,
573 S.W.2d 190, 197 (Tex. Crim. App. [Panel Op.] 1978).  No double jeopardy problems are extant with
this type of submission because the jury returns either an acquittal or a
verdict of guilty on one count only.  Id.

            In
the instant case, the jury was instructed that it could make only one finding
on the verdict form.  Among its choices
was a finding of “not guilty,” a finding of “guilty” as to count one, or a
finding of “guilty” as to count two.  We
hold that the jury’s verdict is not defective for finding Appellant “guilty” on
only one count as it was instructed. 
Furthermore, we hold that the submission of the charge in this fashion
does not subject Appellant to double jeopardy. 
Appellant’s first and second issues are overruled. 

            In
his third issue, Appellant argues that the trial court’s judgment is invalid
because it is silent as to matters required to be in the judgment such as
Appellant’s plea to the offense charged in count two of the indictment and the
verdict thereon.  As set forth above, the
jury, as instructed, did not reach a verdict on count two in the
indictment.  The judgment will be
reformed to reflect Appellant’s plea to count two of the indictment and an
acquittal thereon.  Appellant’s third
issue is overruled.

            In his fifth issue, Appellant contends that the trial
court erred in denying his motion in arrest of judgment.  Appellant’s motion raised substantially the
same grounds as he raises in his issues one and three on appeal.  To the extent our resolution of Appellant’s
third issue requires that we reform the trial court’s judgment, we do not reach
that portion of Appellant’s fifth issue. 
To the extent that the grounds raised to the trial court are the same
grounds as Appellant raised in his first issue, we hold that the trial court
did not err in denying Appellant’s motion. 
Appellant’s fifth issue is overruled in part and not addressed in part.

 

Deadly
Weapon Finding and Omission of a Fine

            In
his fourth issue, Appellant contends that the trial court’s judgment is invalid
because it fails to include the jury’s deadly weapon finding and omits the
monetary fine imposed on Appellant as part of his sentence.  While Appellant is correct that the judgment
does not contain such findings, the remedy Appellant seeks is improper.  

            When
a judgment does not reflect the jury's findings, the remedy is to reform the
judgment.  De Anda v. State,
769 S.W.2d 522, 523 (Tex. Crim. App. 1989); Aguirre v. State, 732
S.W.2d 320, 327 (Tex. Crim. App. [Panel Op.] 1982).  We may reform the judgment to include the jury’s
finding of the use of a deadly weapon.  Asberry
v. State, 813 S.W.2d 526, 529 (Tex. App.–Dallas 1991, pet. ref’d).  As such, we will reform the judgment to
reflect the jury’s deadly weapon finding and imposition of a monetary
fine.  Appellant’s fourth issue is
overruled.

 

Evidentiary
Sufficiency of Deadly Weapon Finding

            In
his sixth issue, Appellant argues that the evidence is legally insufficient to
support the jury’s deadly weapon finding. 
In his seventh issue, Appellant argues that the evidence is
factually  insufficient to support the
jury’s deadly weapon finding.

Legal Sufficiency








            Legal
sufficiency is the constitutional minimum required by the Due Process Clause of
the Fourteenth Amendment to sustain a criminal conviction.  See Jackson v. Virginia, 443
U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); see also
Escobedo v. State, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet.
ref’d).  The standard for reviewing a
legal sufficiency challenge is whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt.  See Jackson, 443 U.S. at 320,
99 S. Ct. at 2789; see also Johnson v. State, 871 S.W.2d 183, 186
(Tex. Crim. App. 1993).  The evidence is
examined in the light most favorable to the jury’s verdict.  See Jackson, 443 U.S. at 320,
99 S. Ct. at 2789; Johnson, 871 S.W.2d at 186.  A successful legal sufficiency challenge will
result in rendition of an acquittal by the reviewing court.  See Tibbs v. Florida, 457 U.S.
31, 41-42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982).

            The
sufficiency of the evidence is measured against the offense as defined by a
hypothetically correct jury charge.  See
Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  Such a charge would include one that “accurately
sets out the law, is authorized by the indictment, does not unnecessarily
increase the State’s burden of proof or unnecessarily restrict the State’s
theories of liability, and adequately describes the particular offense for
which the defendant is tried.”  Id.  








            Here,
the State was required to prove that Appellant (1) used or exhibited a deadly
weapon, to-wit: a firearm, during the commission of the offense or (2) was a
party to the offense and knew that a deadly weapon would be used or
exhibited.  See Tex. Pen. Code Ann. § 1.07(a)(17)
(Vernon Supp. 2005); Tex. Code Crim.
Proc. Ann. art. 42.12 § 3g(a)(2) (Vernon Supp. 2005).  A person is criminally responsible as a party
to an offense if the offense is committed by the conduct of another for which
he is “criminally responsible.”  See
Tex. Pen. Code Ann. § 7.01(a)
(Vernon 2003).  A person is “criminally responsible”
for an offense committed by the conduct of another if, acting with intent to
promote or assist the commission of the offense, he solicits, encourages,
directs, aids, or attempts to aid the other person to commit the offense. See
Tex. Pen. Code Ann. § 7.02(a)(2)
(Vernon 2003).  Appellant argues that
there is neither evidence that he was found in possession of a firearm upon his
arrest, nor that he used a firearm in the commission of the offense with which
he was charged.

            The
court of criminal appeals’ decision in Gale v. State, 998 S.W.2d
221 (Tex. Crim. App. 1999) in instructive. 
In Gale, the appellant permitted police to search his
residence.  Id. at
223.  Upon a search of the appellant’s
bedroom closet, officers discovered a trash bag containing twenty pounds of
marijuana, a Ruger Mini 14 rifle, an Uzi semi automatic assault rifle, a nine
millimeter rifle, a nine millimeter handgun, and ammunition for the firearms
including a loaded clip for the Mini 14 rifle. 
Id.  Relying on Patterson
v. State,[6] the court held that the record supported a deadly
weapon finding because a juror could rationally find that the weapons
discovered facilitated the appellant’s criminal offense of possession of
marijuana.  See Gale, 98
S.W.2d at 225. 

            In
the case at hand, the record reflects that Appellant and Penix were seen
running from the  tent as the officers
approached.  Miller testified that he saw
a  loaded .357 magnum handgun lying on a
chair in close proximity to the items in the tent found to contain
methamphetamine and other items that Pridgen testified were consistent with
items commonly found at clandestine methamphetamine lab sites.  Moreover, Myer[7] stated that Appellant
had been living in the tent for approximately four days before the date in
question.  Myer further testified that
she was a methamphetamine user and that three days before the officers
discovered the tent, Penix had asked her if he could try to get more
methamphetamine out of the substance left over from the manufacture of a
previous batch by putting the substance through a second manufacturing process.  Myer further testified that Appellant was
with Penix when he asked her this question and that she told Penix that it
would be alright if he would get rid of it immediately after he finished.  Finally, Myer stated that in the days leading
up to the arrest, she observed Appellant walking around with a handgun similar
to the one discovered by officers in the tent and described Appellant’s actions
as “patrolling” or “guarding.” 

            Examining
the aforementioned evidence in the light most favorable to the jury’s verdict
and in light of the nonexclusive factors set forth above, we conclude that the
jury could have reasonably determined beyond a reasonable doubt that the weapon
discovered facilitated Appellant’s criminal offense of manufacturing
methamphetamine.  See Gale,
998 S.W.2d at 225.  Moreover, we conclude
that the jury could have reasonably determined beyond a reasonable doubt that
Appellant acted with intent to promote the manufacture of methamphetamine and
aided or attempted to aid Penix to commit the offense with knowledge that the
firearm would be exhibited.  Therefore,
we hold that the evidence was legally sufficient to support the jury’s deadly
weapon finding.  Appellant’s sixth issue
is overruled.

Factual Sufficiency

            Turning
to Appellant’s contention that the evidence is not factually sufficient to
support the deadly weapon finding, we must first assume that the evidence is
legally sufficient under the Jackson standard.  See Clewis v. State, 922 S.W.2d
126, 134 (Tex. Crim. App. 1996).  We then
consider all of the evidence weighed by the jury that tends to prove the
existence of the elemental fact in dispute and compare it to the evidence that
tends to disprove that fact.  See
Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).  Although we are authorized to disagree with
the jury’s determination, even if probative evidence exists that supports the
verdict,  see Clewis, 922
S.W.2d at 133, our evaluation should not substantially intrude upon the jury’s
role as the sole judge of the weight and credibility of witness testimony.  Santellan, 939 S.W.2d at
164.  Where there is conflicting
evidence, the jury’s verdict on such matters is generally regarded as
conclusive.  See Van Zandt v. State,
932 S.W.2d 88, 96 (Tex. App.–El Paso 1996, pet. ref’d).  Ultimately, we must ask whether a neutral
review of all the evidence, both for and against the finding, demonstrates that
the proof is so obviously weak as to undermine our confidence in the jury's
determination, or the proof, although adequate if taken alone, is greatly
outweighed by contrary proof.  Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).[8]  

            A
finding will be set aside “only if the evidence supporting guilt is so
obviously weak, or the contrary evidence so overwhelmingly outweighs the
supporting evidence, as to render the conviction clearly wrong and manifestly
unjust.”  Ortiz v. State,
93 S.W.3d 79, 87 (Tex. Crim. App. 2002); see  Sims v. State, 99 S.W.3d 600,
601 (Tex. Crim. App. 2003).  A clearly
wrong and manifestly unjust finding occurs where such a finding “shocks the
conscience” or “clearly demonstrates bias.” 
 Zuniga, 144 S.W.3d
at 481.

            As
the court of criminal appeals explained in Zuniga, “There
is only one question to be answered in a factual-sufficiency review:  Considering all of the evidence in a neutral
light, was a jury rationally justified in its finding of guilt beyond a
reasonable doubt?”  See id.
at 484.  

            We
have reviewed the record in its entirety. 
The only facts tending to weigh against the jury’s finding is that
Appellant neither had the handgun on his person when he was arrested, nor was
he apprehended inside the tent where the handgun was located.  We iterate that our evaluation should not
substantially intrude upon the jury’s role as the sole judge of the weight and
credibility of witness testimony, see Santellan, 939
S.W.2d at 164, and where there is conflicting evidence, the jury’s verdict on
such matters is generally regarded as conclusive.  See Van Zandt, 932 S.W.2d at
96.  Given the circumstances in the
instant case, we conclude that the jury was entitled to find that the evidence
tending to link Appellant to the firearm in question was of greater consequence
than the evidence not tending to so link Appellant.  The jury was entitled to find that the facts
Myer related concerning her observations of Appellant were a credible and
accurate portrayal of the events that transpired on the days preceding
Appellant’s arrest.  Our review of the
record as a whole, with consideration given to all of the evidence, both for
and against the jury’s finding, has not revealed to us any evidence that causes
us to conclude that the proof supporting a deadly weapon finding is so
obviously weak or is otherwise so greatly outweighed by contrary proof as to
render the finding clearly wrong or manifestly unjust.  Therefore, we hold that the evidence is
factually sufficient to support the jury’s deadly weapon finding.  Appellant’s seventh issue is overruled.

 

Evidence that Others Were Endangered

            In
his eighth issue, Appellant argues that absent evidence that others were
actually endangered, the jury’s deadly weapon finding cannot be sustained.  In support of his contention, Appellant cites
Mann v. State, 13 S.W.3d 89, 92 (Tex. App.–Austin 2000), aff’d,
58 S.W.3d 132 (Tex. Crim. App. 2001) and Cates v. State, 102
S.W.3d 735, 738 (Tex. Crim. App. 2003). 
Both Mann and Cates were cases in which the
State sought a finding that a car was used as a deadly weapon.  See Cates, 102 S.W.3d at 738; Mann,
13 S.W.3d at 90.  In each case, the court
set forth the principle that to sustain a deadly weapon finding, there must be
evidence that others were endangered.  See
Cates, 102 S.W.3d at 738; Mann, 13 S.W.3d at 92.  While such an inquiry is appropriate in the
course of proving that an automobile is a deadly weapon, it is not necessary in
the instant case because a firearm, unlike an automobile, is a deadly weapon
per se.  See Tex. Pen. Code Ann. § 1.07(a)(17).  Moreover, as set forth above, the record
reflects that the firearm in the instant case facilitated Appellant’s criminal
offense of manufacturing methamphetamine. 
We hold that the State was not required to prove that others were
actually endangered to support a deadly weapon finding in the instant
case.  Appellant’s eighth issue is
overruled.

 

Right to Confront Witness

            In
his ninth issue, Appellant argues that the State improperly denied him the
right to confront the State’s witness, Officer Patrick Johnson, during cross
examination by producing evidence tending to establish Appellant’s innocence
after Johnson testified.

            The
standard of review for a trial court's evidentiary ruling is abuse of
discretion.  Long v. State,
10 S.W.3d 389, 396 (Tex. App.–Texarkana 2000, pet ref'd).  The Sixth Amendment to the United States
Constitution guarantees the right of an accused in a criminal prosecution to be
confronted with the witnesses against him. 
U.S. Const. amend. VI; Lopez
v. State, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000).  Confrontation means more than being allowed
to confront the witness physically.  Lopez,
18 S.W.3d at 222.  A primary interest
secured by the Confrontation Clause is the right of cross examination.  Id.  Each Confrontation Clause issue must be
weighed on a case by case basis, carefully taking into account the risk factors
associated with admission of the evidence. 
Id.  In weighing
whether evidence must be admitted under the Confrontation Clause, the trial
court should balance the probative value of the evidence sought to be
introduced against the risk its admission may entail.  Id.  The trial court maintains broad discretion to
impose reasonable limits on cross examination to avoid harassment, prejudice,
confusion of the issues, endangering the witness, and the injection of
cumulative or collateral evidence.  Id.

            However,
unless the offended party timely objects on specific grounds, he waives his
right of confrontation.  See Miller
v. State, 940 S.W.2d 810, 816 (Tex. App.–Fort Worth 1997, pet. ref’d)
(appellant waived confrontation issue even though he timely objected to the
witness’s release by the trial court, where he did not state specifically that
he objected to such release on the basis of his confrontation rights).  In the case at hand, the record reflects that
Patrick Johnson’s affidavit was turned over to Appellant’s counsel by the
prosecution no later than the afternoon of May 18, 2004 after the testimony of
all of the law enforcement officers, including Johnson, had concluded.  When the trial reconvened on May 19, 2005,
Appellant moved for a mistrial, and the following exchange occurred:

 

[APPELLANT’S
COUNSEL]:  [A]t the close of court
yesterday, the Court was gracious enough to file on record of the Court a[n]
affidavit from a confidential informant in this case and provide defense for
the first time we’ve ever seen it a copy of that affidavit.  That affidavit appears to say, first, that
the defendant was not involved in the manufacturing, at least to the witness of
the confidential informant whenever he saw that and for however long he saw it.

 

Implicit
to that is the issue of possession because they’re arising out of the exact
same episode, fact circumstances, situation, front to back.  The testimony was replete yesterday for
periods of time beginning months before the event to many hours after the event
encompassing the period of time that the confidential informant was clearly
there and clearly saw whatever the confidential informant saw.

                

We
urge the Court that that complies with the requirements of Rule 508,[9] the disclosure of the confidential
informant’s identity, the right to confrontation by the defendant, the right to
have that person here.  And I would point
out to the Court as I announced to the Court yesterday, we delayed our opening
statement pending a ruling of the Court on the confidential informant’s
identity because of its impact or potential impact on the defendant’s
case.  That ruling has not been forthcoming.  

                

We’re
now filing an official motion under Rule 508 for that identity attached onto it
the exhibit the Court filed in the record of this case asking that that
identity be disclosed.  We believe the
testimony throughout today establishes there’s a reasonable probability that
this defendant–this confidential informant has information that’s material to
the guilt or innocence stage of this trial.

                

The
Court has done an in camera interview. 
We’ve done the process a little bit upside down, but nonetheless it has
been done by agreement.  So we
respectfully request the identity be disclosed and that person be brought
instant to court to testify.

 

                ....

 

THE
COURT:  [A]re you asking me to make a
ruling at this time on the confidential informant or continue the Court’s
desire to carry the motion forward?

 

[APPELLANT’S
COUNSEL]: I believe that the absence of the confidential informant,
particularly the absence–

 

THE
COURT: I’m not asking for your reasons. 
I’m asking you for what you want me to do.

 

[APPELLANT’S
COUNSEL]: Yes, sir.  I believe the
absence of the affidavit really compromised the cross-examination done
yesterday on the officers.  I don’t know
what’s coming today.  I don’t know the
State’s case.  I don’t know what they’re
going to present.  The confidential
informant appears to be extremely material to the progress of this case.

                

                ....

 

THE
COURT: I’m going to find that the confidential informant does not possess
exculpatory evidence. 

 

[APPELLANT’S
COUNSEL]: We respectfully take exception to the Court’s ruling relying on the
affidavit of the confidential informant. 
We believe part of the record in this case, in and of itself, in order
for the confidential informant to swear or for the officer to swear what the
confidential informant has said–implicit to that, inherent to that, and
actually a part of that, the confidential informant has to have exculpatory
information about Harold Adams.

 

THE
COURT: And the Court had the interview with the confidential informant
transcribed, ordered it sealed so it will be part of the record of this case
for appeal.  And the appellate court can
then examine that record for the in camera interview and determine whether
there was harmful error committed or not.

                

So I’ll
deny your motion I suppose. ....

            

            Appellant’s
objection to the trial court does not comport with his argument on appeal.  While Appellant references “confrontation,”
he did so with regard to his right to confront the confidential informant.  While Appellant later states that the “absence
of the affidavit really compromised the cross examination done yesterday on the
officers[,]” he did not argue, as he now argues on appeal, that the State’s
delay in turning over the affidavit to the defense denied him of his
confrontation rights as to Johnson. 
Thus, we hold that because Appellant’s objection to the trial court
fails to comport with his argument on appeal, he has not preserved the
issue.  See Tex. R. App. P. 33.1(a); Miller, 940 S.W.2d at
816.  Appellant’s ninth issue is
overruled.

 

Methamphetamine Hydrochloride

            In
his tenth issue, Appellant argues that the indictment is fundamentally
defective and will not sustain his conviction for manufacturing methamphetamine
hydrochloride.  In his brief, Appellant states
that he learned for the first time during trial that he was accused of
manufacturing methamphetamine hydrochloride. 
However, Appellant offers no citation to the record to support that such
a statement was made.  See Tex. R. App. P. 38.1(h).  The indictment does not charge Appellant with
manufacture of methamphetamine hydrochloride, nor does the court’s charge make
reference to such a substance.  The
judgment sets forth that Appellant was found guilty of manufacture of a
controlled substance as charged in the indictment.  We conclude that Appellant was not charged
with or convicted of manufacturing methamphetamine hydrochloride.[10]  Appellant’s tenth issue is overruled.

Evidentiary Sufficiency of Underlying Conviction

            In
his thirteenth issue, Appellant argues that the evidence is legally
insufficient to support his conviction for manufacture of methamphetamine.  In his fourteenth issue, Appellant argues
that the evidence is factually insufficient to support his conviction for
manufacture of methamphetamine.  The
standard of review applicable to legal and factual sufficiency is set forth
above in our discussion of Appellant’s sixth and seventh issues respectively.

            In
the instant case, the State was required to prove that Appellant knowingly
manufactured methamphetamine. See Tex.
Health & Safety Code Ann. §§ 481.112(a); 481.102(6).  “Manufacture” means the production,
preparation, propagation, compounding, conversion, or processing of a
controlled substance other than marijuana, directly or indirectly by extraction
from substances of natural origin, independently by means of chemical
synthesis.  See Tex. Health & Safety Code Ann. §
481.002(25) (Vernon Supp. 2005).  The
form in which a controlled substance is recovered is not determinative of
whether the accused has committed the offense of manufacturing the drug.  Green v. State, 930 S.W.2d 655,
657 (Tex. App.–Fort Worth 1996, pet. ref’d). 
Evidence that shows any of the procedures listed in section 481.002(25)
is sufficient to support a conviction of the manufacture of a controlled
substance.  Id.  A conclusion of guilt can rest on the
combined and cumulative force of all incriminating circumstances.  See Conner v. State, 67
S .W.3d 192, 197 (Tex. Crim. App. 2001).  


Corroboration of Accomplice Testimony

            Appellant also contends that Myer’s testimony is not
sufficiently corroborated.  Texas Code of
Criminal Procedure article 38.14 states that “[a] conviction cannot be had upon
the testimony of an accomplice unless corroborated by other evidence tending to
connect the defendant with the offense committed; and the corroboration is not
sufficient if it merely shows the commission of the offense.”  Tex.
Code Crim. Proc. Ann. art. 38.14 (Vernon 2005).  In order to determine whether the accomplice
witness testimony is corroborated, we must eliminate all accomplice evidence
and determine whether the other inculpatory facts and circumstances in evidence
tend to connect the appellant to the offense. 
See McDuff v. State, 939 S.W.2d 607, 612 (Tex. Crim. App.
1997).  The nonaccomplice evidence does
not have to directly link the appellant to the crime, nor does it alone have to
establish his guilt beyond a reasonable doubt; but rather, the nonaccomplice
evidence merely has to tend to connect the appellant to the offense.  Id. at 613.  No precise rule can be formulated as to the
amount of evidence required to corroborate. 
Gill v. State, 873 S.W.2d 45, 48 (Tex. Crim. App.
1994).  

            Viewed
in the light most favorable to the jury's verdict, the nonaccomplice evidence
in the instant case established the following: 
(1) Johnson was contacted by a reliable confidential informant who told
him that Penix was manufacturing methamphetamine in a small tent behind a
residence owned by Myer along with another individual; (2) as Johnson and other
officers approached, he observed two white males run from a tent in the
backyard into a wooded area behind the house;[11] (3) Johnson
identified the two men who ran from the tent as Appellant and Penix; (4)
Appellant was wearing blue jeans, but was not wearing a shirt; (5) Hanes
shouted at Appellant to stop, but Appellant continued to flee by scaling a
barbed wire fence in the backyard and running across a pasture into the wooded
area behind the residence where he was ultimately apprehended; (6) Miller
looked inside the tent and observed (a) a plastic bowl with a doughy mixture in
it, (b) a blue pitcher with a metal strainer and a cloth on top of it that
contained a liquid substance, (c) a loaded .357 magnum handgun lying on a
chair, and (d) a black bag containing clothing;[12] (7) a shirt was
found by a nearby tree that was likely to be Appellant’s size since Penix was a
much larger individual than Appellant; (8) Miller saw no person in the backyard
other than Appellant and Penix; (9) Miller detected the familiar odor of
anhydrous ammonia emanating from the tent; (10) as Pridgen approached the tent,
he detected the strong odor of ammonia that he associated with anhydrous
ammonia, a common ingredient in the manufacture of methamphetamine; (11)
Pridgen described the tent as a methamphetamine lab and stated that, from the
items located in the tent, it appeared as though “they were in the process of
producing and extracting methamphetamine” in the tent; (12) Pridgen testified
that many of the items located in the tent were consistent with items commonly
found at clandestine methamphetamine lab sites; (13) Pridgen further testified
that items located in the Myer residence such as crushed ephedrine or
pseudoephedrine tablets, precut strips of tinfoil, drain opener, coffee
grinders with powder residue on them, and mineral spirits, were commonly used
in the methamphetamine manufacturing process; (14) Pridgen described other such
items located in the backyard of the Myer residence including Coleman fuel, a
garden sprayer,[13] starting fluid cans, and a propane tank;
and (15) Pridgen later tested the substances found in the plastic bowl and the
metal strainer located atop the blue pitcher, which he stated contained
methamphetamine.  After eliminating Myer’s
testimony from our consideration and conducting an examination of the
nonaccomplice evidence, we conclude that such nonaccomplice evidence does
indeed tend to connect Appellant to the offense sufficiently to corroborate
Myer’s testimony.

Legal Sufficiency

            In
addition to the aforementioned evidence, Myer’s testimony reflects that she
lived at the residence behind which the tent containing the methamphetamine lab
was located.  Myer stated that Appellant
had been living in the tent for approximately four days before the date in
question.  Myer further stated that it
was common for Penix to spend time at her residence and that he had spent the
night there the night before he was arrested. 
Myer testified that she was a methamphetamine user. Myer further
testified that three days before the officers discovered the tent, Penix asked
her if he could smoke the bones to try to get a second pull out of them.  According to Myer this meant to try to get
more methamphetamine out of the substance leftover from the manufacture of a
previous batch by putting the substance through a second manufacturing
process.  Myer further testified that
Appellant was with Penix when he asked her this question and that she told
Penix that it would be alright if he would get rid of it immediately after he
finished.  Myer stated that in the days
leading up to the arrest, she observed Appellant walking around with a handgun
similar to the one discovered by officers in the tent.  Myer described Appellant’s actions as “patrolling”
or “guarding.”

            Examining
the aforementioned evidence in the light most favorable to the jury’s verdict,
we conclude that the jury could have reasonably determined beyond a reasonable
doubt that Appellant knowingly manufactured methamphetamine.  Therefore, we hold that the evidence was
legally sufficient to support the jury’s verdict.  Appellant’s thirteenth issue is overruled.

Factual Sufficiency

            Appellant
does not, in his brief, direct us to any evidence that he contends greatly
outweighs the contrary proof tending to support his conviction.  We have reviewed the record in its
entirety.  We reiterate that our
evaluation should not substantially intrude upon the jury’s role as the sole
judge of the weight and credibility of witness testimony, see Santellan,
939 S.W.2d at 164, and where there is conflicting evidence, the jury’s verdict
on such matters is generally regarded as conclusive.  See Van Zandt, 932 S.W.2d at
96.  Our review of the record as a whole,
with consideration given to all of the evidence, both for and against the jury’s
finding, has not revealed to us any evidence that causes us to conclude that
the proof of guilt is so obviously weak or is otherwise so greatly outweighed
by contrary proof as to render Appellant’s conviction clearly wrong or
manifestly unjust.  Therefore, we hold
that the evidence is factually sufficient to support the jury’s verdict.  Appellant’s fourteenth issue is overruled.[14]

Conclusion

            We
have overruled Appellant’s issues one, two, three, four, six, seven, eight,
nine, ten, thirteen, and fourteen.  We
have overruled Appellant’s issue five in part, and we have not addressed part
of Appellant’s issue five or issues eleven and twelve.  We reform the trial court’s
judgment as follows: (1) the trial court’s judgment is reformed
to reflect Appellant’s “not guilty” plea to count two of the indictment by
which Appellant was charged with possession of a controlled substance, to wit:
methamphetamine, in an amount of 200 grams or more but less than 400 grams; (2)
the trial court’s judgment is reformed to reflect an acquittal of
the aforementioned possession charge as set forth in count two of the indictment;
(3) the trial court’s judgment is reformed to reflect the jury’s
finding that Appellant used or exhibited a deadly weapon, to wit: a firearm,
during the commission of the offense or was a party to the offense and knew
that a deadly weapon would be used or exhibited; and (4) the trial court’s
judgment is reformed to reflect that Appellant’s sentence
included a fine in the amount of ten thousand dollars.  As reformed, we affirm the
trial court’s judgment.

 

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

 

Opinion delivered May 24, 2006.

Panel consisted
of Worthen, C.J., Griffith, J., and DeVasto, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)











[1]
The State later filed notice of its intent to seek an affirmative finding that
Appellant used or exhibited a deadly weapon.





[2]
Johnson testified that the two men were within five to ten feet of the tent and
already running when he first saw them. 
Investigator Kevin Hanes later testified that the men were within arm’s
length of the tent when he first observed them.





[3] Miller stated that the items of clothing
inside the bag found in the tent appeared that they could be Appellant’s size
and were too small to fit Penix.





[4] Pridgen testified that garden sprayers are
used as hydrogen gas generators in the final stage of the methamphetamine
manufacturing process.  He stated that
the contents of the sprayer were tested and deemed acidic, indicating that the
sprayer was used in the methamphetamine manufacturing process.





[5]
Pridgen testified that the substance in the metal strainer weighed 21.75 grams
while the substance in the bowl weighed 333.18 grams.





[6] 769 S.W.2d 938, 942 (Tex. Crim. App. 1989).





[7]
We address the issue of whether Myer’s testimony was properly corroborated in
our discussion of Appellant’s thirteenth and fourteenth issues herein.





[8]
However, “contrary evidence does not have to outweigh evidence of guilt; it has
to be only enough to provide reasonable doubt.” 
Zuniga v. State, 144 S.W.3d 477, 483 (Tex. Crim. App.
2004). 





[9] See Tex.
R. Evid. 508 (privilege of the State to refuse to disclose identity of a
confidential informant subject to certain exceptions).





[10]
Appellant references that the trial court denied his pretrial motion to have an
independent expert qualitatively analyze all samples of any alleged controlled
substance in this matter and argues that by its denial of his motion, the trial
court denied him knowledge of the actual substances in Penalty Group 1 which he
was alleged to have manufactured.  While
Appellant cites no authority to support that the trial court’s denial of his
motion was erroneous, see Tex. R.
App. P. 38.1(h), we iterate that the indictment alleged that Appellant “knowingly
manufacture[d] a material, compound, mixture and preparation containing a controlled
substance, namely, methamphetamine....”  See
Tex. Health & Safety Code Ann.
§§ 481.112(e); 481.102(6) (Vernon 2003 & Supp. 2005).





[11]
See n. 2.





[12] See n. 3.





[13]
See n. 4.





[14] Because we have concluded that the evidence
was both legally and factually sufficient to support the jury’s verdict, we do
not reach Appellant’s eleventh and twelfth issues, in which he argues that the
evidence was legally and factually insufficient to support his conviction as a
party to the offense of manufacturing methamphetamine.